IN this cause, brought on, by consent of parties, and heard on the bill and answer, and on the testament of Thomas Sale, exhibited and read, the court, on the *285 day of March, in the year of our lord one thousand seven hundred and ninety-eight, after consideration of the arguments by counsil, professed the sentiments, and pronounced the decree, which follow :
The statute, for preventing fraudulent gifts of slaves, enacting, in the year one thousand seven hundred and fifty-eight, that a gift, not declared by testament in writing, or deed, recorded, after having been legaly proved, should not be sufficient to pass the right of slaves, upon which statute, if a gift had been, the plaintiffs relied, — this statute did not comprehend this case, — a delivery of slaves, in consideration or for cause of marriage, than which no consideration or cause is more estimable or meritorious; — did not comprehend this case, in which a fraud, condemned in the prooemium of the statute, is attempted to be, by the constitutory part of it, justified, for the benefit of his family, who contrived it.
A gift, if it may be called a gift, when it is in consideration of marriage, is strictly not a gift purely gratuitous, whereby the *donee gaineth the thing given, without meriting it by way of a recompence, supposed to have been the kind of gift contemplated by the legislature, but, is a convention, wherein the parties perform and remunerate, alternately, each bestowing on and taking from the other some thing beneficial.
Nor, if slaves, delivered by the father of a wife to her husband, in consideration of their intermarriage, may be said to have been given, could the gift be one of those gifts, by means of which frauds detrimental to creditors and purchasers were practised; to prevent which mischiefs was the prefaced object of the statute; — not one of those gifts, because ‘the donor’ did not, in the language of that act, ‘remain in possession of the slaves, as visible owner thereof.’
The meaning of the legislature was planely this: donors of slaves, who nevertheless retain possession of them, defraud people, who believe the possessors, being the visible, to be the real, owners: for prevention WHEREOF,— for prevention of injury by this deception, which secret gifts occasion, proposing such a disunion of the right and possession, as that they may be in different persons at the same time; and to the end that people may have the means of knowing the true owners; no gift of any slaves, not authenticated in the mode now prescribed, shall be good to pass any estate in such slaves; that is, with a commentary, necessary to produce harmony and symmetry in the act, no such unauthenticated gift of any slaves, whereof the donor ‘retaineth possession,’ shall be good, this evidently remedies the mischief and all the mischief which the legislature said they intended to PREVENT.
The other sense, in which, as is pretended, the statute may be understood, is this: ‘for prevention of frauds by secret gifts of slaves, which, notwithstanding, remain in possession of the donors, as visible owners thereof, and to the end that creditors and purchasers, recurring to archives, where monuments of acts, which separate the right from the possession of slaves, ought to be deposited, may discover whether these visible owners, possessors, be the true owners, or not; no gift of slaves, whereof the donor DOTH NOT retain the possession, but of which, on the contrary, he hath DELIVERED possession to the donee, so that the right and possession are, not in different persons but, in the same person, and people believe the donee, who is the visible, to be the true, owner, and therefore are not defrauded, if the gift be not recorded, shall be good; that is, to prevent deception by gifts, disuniting the right and possession, gifts, which unite the right and possession, shall not be good, unless they be re- , corded. ’
*The statute, thus expanded, makes the remedy transcend the limits by which the evil intended to be prevented is defined, directly opposeth the design of its authors, and to him, who is now criticising this interpretation, appeareth to be a monstrous absurdity, for uno flatu, the legislature, according to this interpretation, hallows the fraud which it damns, retention of the right, when the possession Is resigned, is as much a fraud as retention of the possession, when the right is resigned; and more dangerous, because to guard against this fraud is more difficult than to guard against that; but, if this interpretation prevale, when the right was given, and, with it, the possession resigned, the gift, not in writing, and recorded, was void, and the possession must be restored ; a doctrine said to be sanctified by supreme authority.
If slaves, delivered to the husband, in consideration of marriage, more truly than slaves, delivered to a purchaser in consideration of money paid, may be said to have been given, the forementioned statute, if it comprehend such a gift, is, by force of the other, enacted in the year one thousand seven hundred and eighty-seven, mentioned in the answer, confined in its operation to gifts of slaves, whereof the former owners had, notwithstanding such gifts, remained in possession.
The plaintiffs counsil objected that the intermarriage of the defendents father and mother, at which time the right of the former, if any he had, originated, doth not appear to have been posterior to the restraining statute, and if it were, as by the facts stated in the bill and admitted by the answer it might have been, prior, that statute would not aid the defendent.
To which is answered,
first, against the plaintiffs, the intermarriage would be presumed to have been posterior, if to prove or presume it had been necessary, because, if the contrary had been true, they could have proved it. but it was unnecessary, for,
secondly, this statute is a declaratory law, and, although it seem retroactive in a manner, yet is it not obnoxious to censure,. *286 as those laws, which are reprobated, because looking' at the same time, behind as well as before, like *Janus, ♦Franc’Bacon, they attribute energy to rights before they had existence, inflict punishments for actions- before they could be known by the perpetrators of them to be criminal, and the like; a declaratory law, in its aspect towards the past, hath nothing so absurd or truculent, it shews the meaning of the former law according to which it ought to have been understood at its sanction, and must be understood in future, but so as not to perturb settlements by judicial sentences. it doth not ordain any new ^constitution; but is an interpretation, and consequently coevous with the law interpreted, in the same manner as if the substance of the one had been in the other originally.., lex declarator ia omnis, licet non habet verba de prasterito, tamen ad praeterita, ipsa vi declarationis, omnino trahitur, non enim turn incipit interpretatio cum declaratur, sed efficitur tanquam con-temporánea ipsi legi. Franc’ Bacon de augment’ scient,’ lib’ VIII cap’ III, aphor’ 51.
So that a gift of staves in consideration of marriage, accompanied with a resignation of the possession, if it must be called a gift, is sufficient, without registration or even scripture, to transfer the dominion.
But, say the plaintiffs, a gift or any other disponing act, which is essential to such translation,'is not admitted, and cannot be proved, ever to have existed; and, if not, they conclude that the defendent can not have a title; for, then, as they added, the case is no more than this: a father, when his daughter was married, delivered slaves to her husband, and did not demand restitution of them from him, during his life time, not so long however as three years; all which might have happened, and the father might nevertheless have retained the property.
This conclusion, in which the plaintiffs counsil seemed to acquiesce, with full persuasion that it is legitime, is believed to have been formed with temerity, and not to be deducible from sound principles.
Although evidence of the particular words uttered by father and husband in the treaty, •of which an alliance between them was the subject, is not and can pot be produced, we must not hence infer that the parties were m,ute during the transaction, when we see the husband removing, with his wife, to his own mansion and domain, from those of the father, her filial portion, delivered by him, — removing slaves, perhaps cattle, things needful and convenient for housekeeping, and so forth, — and when we see the husband, during all his lifetime af-terwards, exercising over 'these subjects, with the license, the powers, of an uncoun-trouled owner, and this with the knowledge of the former owner, — evidence cannot be requisite to convince us, and therefore we venture to assume, that.some pact or other intervened; and that this pact must have been, either that the husband should restore the slaves to the wifes father conditionally, or should restore them in all events, or that, not obliged to restore them at all, he should have the property of them in himself.
The plaintiffs would load the defendent with the obligation to prove, by written evidence or oral' testimony, the facts on which her title must have been established, — perversely—for ^presumption favoureth her title sufficiently, to throw on the plaintiffs the burthen of labouring to prove facts by which the credit of that presumption would vanish : — cruely as well as perversely; the defendents age, if it equal, doth not excede ten or eleven years, of which seven had elapsed, before she, deprived of one parent by death, and, by collusion of the other with a stepfather, worse than completely orphanized, is cited to prove transactions which were before her birth.
That a conditional restitution of the slaves was contemplated in the supposed pact between the father and his daughters husband, when they were delivered, is barely imaginable, the plaintiffs indeed, quoting some words from the fathers testament, written several j'ears after the marriage, would insinuate, that he never intended to dispose of the slaves so that her husband would have more than a life estate in them, but what the testator did or said, at that time, cannot be evidence of any fact derogatory from the marital right, and deserves less, if it could otherwise deserve any, attention, when he-is observed, in the same testament, bestowing on his other daughter her portion absolutely, the only apparent reason for which difference shews him to have been susceptible of a duplicity, which ought to detract from his credit.
Was then the pact a mere simple loan, implicating a right of resumption in the lender, whensoever he should be pleased to demand the subject, or did the pact transfer the property of the subject to the husband; of which pacts one is necessary to be presumed, every other being excluded by hypothesis?
The pact, if it were not a loan, must have transfered the property, et vice versa.
When of two propositions, of which one is true, but of which one only can be true, neither is affirmed by certain proof, that which presumption favours must prevale.
Presumption here favoureth the proposition, that the pact transfered the property, since that effect may be wrought with as little diplomatic formality in the case of a slave as in the case of a horse, an ox, and the like, for
first, the husband merited the property, having performed what in legal estimation was equivalent to that property, and therefore owed not restitution;
Secondly, the slaves were delivered to the husband by the father, as the plaintiffs are understood to have admitted by the bill, tradition of the subject, thé right to which is transferred, typifies a transition of that right and the consent of the owner with more emphasis than any mode of transfer- *287 ing dominion heretofore invented: and, '^'thirdly, the husband, during all his life time retained possession of the slaves, employing them in his service and enjoying- the fruits of their labour
E'rorn these topics the presumption, that the father transfered the slaves to the husband, is so imperative of our assent that we cannot withold it, since the plaintiffs have not, on the contrary, proved the slaves to have been lent.
If, supposing no conventional words to have been spoken by father and husband, apt to transfer the property of the slaves, we admit only to have intervented a delivery, simple otherwise than as it was connected with the motive to it, by the father, this with acceptance and fruition by the husband was sufficient to vindicate the title of the latter, the will of the parties is all that is essential naturaly to translation of dominion, and occurrences manifest that will in this case, if herds, flocks, supel-lectile ware, culinary utensils, and other personal property, had been, as probably they or some of them were, delivered and removed at the same time with the slaves, no man would have made a question whether the property of these chatels was transfered to the husband, and yet, if the statutes of 1758, and 17 7, which are not considerable in this tome of the disquisition, be praetermitted, the property of slaves whatever be their number, if possession of them be delivered in performance of any contract, may be transfered with as little judicial ceremony as a single quadruped, or article of house or kitchen furniture.
After all that hath been said in this and similar cases, in every one of which the statutes of 17S8 and 1787, so often mentioned, seemed to, not only counsil but, judges to be of decisive importance, those statute were introduced impertinently, the statutes apply to the case of a DONOR REMAINING in possession, — to the case of one who having DISPONED the right, RETAINED possession; but in this case, if there was a gift, the DONOR did not REMAIN in possession, but, having ISPONED possession to the DONEE, is pretended to have RETAINED the right.
The court therefore would have dismissed the bill; but the parties, in case of a decision, in affirmance of the defendants title, having proposed, that an account of the slaves and their profits be taken, doth adjudge, order and decree, that the plaintiffs do discover the names of the slaves which were delivered by the defendants grandfather to her father on his marriage, and of their increase, and render an account of the profits of the said slaves since the death of her father, and deliver such of the slaves as survive, and pay the said profits, to the defendents guardian for her use, an account of which profits commissioners "'are appointed to examine and adjust, and to report, with the names of the slaves, to the court; saving to the plaintiff Susanna her rights, if any she have, derived from her former husband.*

This case was decided by the Court of Appeals, in Oct. 1798, 4 OaP. 361, upon the grounds not effecting the main question discussed by the Chancellor. They dismissed the Bill, as stating the case too imperfectly to bring the merits before the Court. A bill in the nature of a bill quia timet must shew reasons for sustaining it, which this did not: especially if it be against an infant and relate to transactions before her birth and of which a discovery from her was not to be expected. These were the grounds taken there.
It -will be perceived, that if S.’s title were deprived from the will of her grandfather, her mother would be entitled to the slaves for her life. But the case would be different, if her father had had them in absolute right by the delivery upon his marriage. See abstract, ante, p. 322. — Note in edition of 1852.